IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANTOSH LAL, | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-5007 |
| | : | |
| TARGET CORPORATION, | : | |
|       Defendant. | : | |

Diamond, J.                                                                                                          Apr. 2, 2013

## MEMORANDUM

Plaintiff Santosh Lal alleges that she slipped and fell on spilled soda while shopping at a Philadelphia-area Target store. She brings this negligence action against Defendant Target Corporation for maintaining a dangerous condition on its premises. Because Plaintiff has failed to produce any evidence that Target had notice of the spill, I will grant summary judgment in favor of Target.

I.    LEGAL STANDARDS

In this diversity action, the Parties correctly agree that I must apply Pennsylvania law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 80 (1938); Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005); 18 U.S.C. § 1332 (2005).

    A.    *Summary Judgment*

Upon motion of any party, summary judgment is warranted "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c). The moving party must initially show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is material only if it could affect the result of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The district court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, nbut may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    B.    *Pennsylvania Law*

To establish liability for negligence, a plaintiff must prove "four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Cox v. Wal-Mart Stores E., L.P., 350 F. App'x 741, 743 (3d Cir. 2009) (quoting Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 722 (Pa. 1997)). The "duty or obligation" of a property owner turns on whether the entrant is a trespasser, licensee, or invitee. Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). The Parties agree Plaintiff was Target's invitee. (Doc. No. 33 at 10; Doc. No. 21 at 4.) "Possessors of land owe a duty to protect invitees from foreseeable harm." Carrender, 469 A.2d at 123 (citing Restatement (Second) of Torts §§ 341A, 343, 343A). This is "the highest duty owed to any entrant upon the land." Treadway v. Ebert Motor Co., 436 A.2d 994, 998 (Pa. Super. Ct. 1981). Still, a store

owner is liable for injuries to a patron caused by a dangerous condition on the premises only "if he knows of or reasonably should have known of the condition." Swift, 690 A.2d at 722 (quoting Blackman v. Fed. Realty Inv. Trust, 664 A.2d 139, 142 (Pa. Super. Ct. 1995)).  The invitee must thus show that the store owner had "actual or constructive notice" of the dangerous condition.  Id. at 723.

II.   BACKGROUND

I have construed the facts in the light most favorable to Plaintiff and resolved all material factual disputes in her favor.

Upon entering a Target store in Plymouth Meeting on the evening of May 31, 2011, Plaintiff began shopping while her sister and daughter went to the restroom. (Doc. No. 21 Ex. C, at 48:7-9; Doc. No. 35 Ex. C, at 4:21.)  When Plaintiff walked from the store's carpeted entrance onto the tile floor, she slipped and fell to the ground, injuring her knee.  (Doc. No. 21 Ex. C, at 58-60.)  She estimates she had been in the store ten minutes before she fell, and had taken approximately ten to fifteen steps on the tile floor.  (Id. at 47:15; 61:3.)  She did not notice anything on the floor before falling, and there were no witnesses to the accident.  (Id. at 61-64.)

Photographs of the floor taken just after the incident show scattered drops of brown liquid.  (Doc. No. 33 Ex. C.)  Target's "leader on duty" that evening, Kathryn Donnelly, prepared a Guest Incident Report, describing a "trail of spilled soda droplets (dime-sized)" on the floor near Plaintiff's fall.  (Doc. No. 21 Ex. B.)  This "trail of brown liquid," according to Target employee Timothy Grossman, "wasn't very big.  It seemed like a very limited amount of liquid." (Doc. No. 33 Ex. B, at 27:19-22.)  Donnelly estimated that the area covered by the scattered

droplets was "perhaps three to four feet." (Doc. No. 35 Ex. C, at 80:16-19.) According to Grossman, the trail of drops extended "[m]aybe a couple of feet," and "wasn't very wide." (Doc. No. 33 Ex. B, at 28:10-13.) Plaintiff's daughter testified that the largest drop of liquid was approximately 3 to 4 inches in diameter. (Doc. No. 34 Ex. A, at 59:2-12.)

Grossman believed the soda may have spilled from a cup in a stray cart found in the aisle. (See Doc. No. 33 Ex. B, at 30:1-19.) The Incident Report indicates the liquid was "spilled soda pushed in a cart." (Doc. No. 21 Ex. B.) Neither Donnelly nor Grossman (nor any other Target employee) had seen the spill before Plaintiff's fall or knew how long the spill had been on the floor. (Doc. No. 35 Ex. C, at 55:6-10, 80:21-24; Ex. E, at 38:1-8.) Donnelly believed the spill was recent because the droplets did not appear to have dried or become sticky. (Id. Ex. C, at 81:1-9.) She did not notice any "skid marks or slide marks" in the area. (Id. at 78:1-2.)

Plaintiff testified that she did not know what caused her to fall and did not see any liquid on the floor either before or after she fell. (Doc. No. 21 Ex. C, at 15-21.) The Incident Report signed by Plaintiff just after her fall provides, however, that the "cause of the incident" was a "soda spill." (Id. Ex. B.) Further, Plaintiff's daughter, Kulvinder Kaur, testified that Plaintiff had told her "[s]he feel like something slippery a little bit and she fall down." (Id. Ex. D, at 62:24-63:3.) Kaur did not see her mother fall, nor did Kaur see the spilled liquid as she approached her mother after she fell. (Id. Ex. C, at 64:15-17; Ex. D, at 67:6-9.) Only when they were waiting for the ambulance to arrive did Kaur notice the spill. (Id. Ex. C, at 68:2-5.) After asking her mother what had happened, Kaur said, "I see a little spot over there. Maybe you slip[ped] over there." (Id. at 67:20-21.) Kaur did not inspect Plaintiff's sandals or clothing after she fell. (Id. at 64:16-21.) Later, at the hospital, Kaur noticed a 2 to 3 inch wet spot on Plaintiff's clothing. (Id. at 66:1-9.)

Plaintiff fell in a "pretty heavily trafficked" aisle near the store's main entrance. (Doc. No. 33 Ex. A, at 140:16-18.) Target floor supervisor Richard Sitek testified that he usually inspected this "sub main aisle" approximately "15 to 20" times "on any given night." (Id. Ex. E, at 19:4-6.) Donnelly's "personal routine" as a leader on duty was to "do a circuit of the store every 30 to 45 minutes," checking aisles "8 to 10 times a day" for spills and debris. (Id. Ex. A, at 7:11-16, 30:12.) Plaintiff has not alleged that any Target employee was aware of the spill before her fall.

III.   DISCUSSION

Defendant argues that I may determine as a matter of law that Plaintiff did not slip on the soda drops because she had no "direct knowledge" that she slipped on the spill. I disagree. Target employees who came to Plaintiff's aid noticed the spill near her fall. Target's Incident Report provides that, according to the "Guest," a soda spill caused the accident. (Doc. No. 21 Ex. B.) Kaur, having seen the spill and the wet spot on her mother's clothes, believed the spill had caused the fall. (See Doc. No. 21 Ex. B; Ex. D, at 64:2-66:24.) Kaur also testified that Plaintiff said that she felt "something slippery" before she fell. Based on this evidence, a reasonable juror could find that Plaintiff slipped on the soda spill. See Anderson, 477 U.S. 248-49.

There is no evidence, however, from which a jury could reasonably find that Target had notice of the spill. Indeed, Plaintiff concedes that Target had no actual notice of the spill. Rather, she contends that a jury could reasonably find that Target had constructive notice of the spill, given its size, shape, and location. (See Doc. No. 33.) I do not agree.

To prove constructive notice, Plaintiff must show, *inter alia*, that Target had an

opportunity to remedy the dangerous condition.  Felix v. GMS, Zallie Holdings, Inc., 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011) aff'd, 11-4475, 2012 WL 4833329 (3d Cir. Oct. 11, 2012). "One of the most important factors" in the constructive notice determination is the spill's duration before the fall.  Id. (citing Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001)). "[W]here a plaintiff points to such evidence, it is a question of fact for the jury whether, under all the circumstances, the defective condition of the floor existed long enough so that it would have been discovered with the exercise of reasonable care." Saldana, 260 F.3d at 232.  "A jury is not permitted, however, to speculate or guess; conjecture, guess or suspicion do not amount to proof."  Lanni v. Pa. R.R Co., 88 A.2d 887, 889 (Pa. 1952).  Without evidence that the spill had been on the floor for a "significant duration of time, a jury may not reasonably infer that [Target] had constructive notice." Cox, 350 F. App'x at 744.

Plaintiff has presented no evidence as to when the spill occurred.  Rather, she suggests only that the soda spilled from an unattended shopping cart farther down the aisle.   Even if Plaintiff is correct, this indicates only *how*, not *when*, the spill occurred. See Saldana, 260 F.3d at 234 (dust on pool of wax insufficient to indicate how long wax had been on the floor where "no evidence of how much dust was found, how long it would have taken for dust to accumulate, or whether the dust was picked up off the floor by the spreading wax or the force of [plaintiff's] fall").  Although Plaintiff speculates that the cart must have been in the aisle for some time, "[t]he mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way." Id.  Similarly, the location of the spill in a "highly trafficked area," without more, is insufficient to establish notice.  See Craig v. Franklin Mills Assocs., L.P., 555 F. Supp. 2d 547, 551-53 (E.D. Pa. 2008) (no constructive notice where plaintiff presented evidence of "trail of soda" in a highly trafficked area that had "thinned out"

and "lost carbonation").

Plaintiff appears to claim that because Target employees regularly patrolled the aisles and the store was equipped with "spill stations," Target should have known about the spill that caused her fall.  This is simply incorrect.  Such evidence might well relate to whether Target acted reasonably, but does not show that Target knew or should have known of the spill.  See Read v. Sam's Club, No. 05-170, 2005 WL 2346112, at *3 (E.D. Pa. Sept. 23, 2005) (presence of spill stations and timing and documentation of safety sweeps by store employees "relevant only after plaintiff makes an evidentiary showing" of constructive notice).

Finally, Plaintiff argues that the existence of a "3-4 foot puddle" was alone sufficient to establish Target's constructive notice of the spill.  (Doc. No. 33.)  The law does not support this contention.  See Canton v. Kmart Corp., 470 Fed. App'x 79, 86 (3d Cir. 2012) (evidence of large spill was insufficient where no "footprints or other evidence suggest[ed] that the liquid had been on the floor long enough for Kmart to have had constructive notice"); Saldana, 260 F.3d at 233-34 (size of wax puddle did not establish when spill occurred or its duration).  These decisions are especially persuasive here, because the record belies the existence of a large puddle.  Construing the evidence favorably to Plaintiff, it shows a scattering of small droplets over a 3 to 4 foot area.  Indeed, Plaintiff's daughter testified that the largest drop was 3 to 4 *inches* in diameter.  Moreover, there were no "skid marks or slide marks" to suggest that the spill had been on the floor for some time.  (Doc. No. 35 Ex. C, at 78:1-2.)  In these circumstances, even if the soda "puddle" had been substantial, that, without more, does not indicate how long it was on the ground.

The overwhelming weight of authority indicates that summary judgment is warranted where there is no evidence as to the time or duration of the spill that causes a plaintiff to slip and

fall. <u>Craig</u>, 555 F. Supp. 2d at 554 (collecting cases). Plaintiff has produced no evidence that Target had actual or constructive notice of the spill that caused her to fall. Accordingly, because I am compelled to conclude as a matter of law that Target was not negligent, I will enter judgment in its favor.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate Order follows.

/s/ Paul S. Diamond
_____
Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTOSH LAL,              : | |
|        Plaintiff,     : | |
|               : | |
| v.                          : | Civ. No. 12-5007 |
|               : | |
| TARGET CORPORATION,         : | |
|        Defendant.    : | |

**O R D E R**

**AND NOW**, this 2nd day of April, 2013, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 21) and all related submissions (Doc. Nos. 24, 27, 33, 34, 35), and for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that Defendant's Motion (Doc. No. 21) is **GRANTED**. Judgment shall be entered in favor of Defendant Target Corporation and against Plaintiff Santosh Lal.

The Clerk of Court shall mark this case **CLOSED** for statistical purposes.

                                                  **AND IT IS SO ORDERED.**

                                                  *Paul S. Diamond*

                                                  _____

                                                  Paul S. Diamond, J.